**Arthur RIVERS, Plaintiff,**

v.

**Margaret M. HECKLER, Secretary of Health and Human Services, Defendant.**

**No. 83 Civ. 0081(MP).**

United States District Court,
S.D. New York.

Jan. 4, 1984.

---

Rudolph W. Giuliani, U.S. Atty., S.D.N.Y. by Mary Anne Wirth, New York City, for defendant.

Harlem Legal Services, Inc., New York City, for plaintiff; Ishmael Lahab, New York City, Michelle Noah, New York City, of counsel.

## OPINION AND ORDER

MILTON POLLACK, Senior District Judge.

Plaintiff commenced this action, pursuant to the Social Security Act, 42 U.S.C. § 405(g), to obtain judicial review of a final decision by the Secretary of the Department of Health and Human Services, which determined that under the provisions of the Act and the regulations thereunder the plaintiff's disability and entitlement to disability insurance benefits had ceased in February, 1981.

The parties have submitted cross motions for judgment on the pleadings pursuant to Fed.R.Civ.Proc. 12(c). For the reasons appearing hereafter, plaintiff's motion for judgment on the pleadings will be granted and the decision of the Secretary will be reversed.

### I. *Factual and Procedural Background*

Plaintiff was born on March 10, 1928 and had no formal education beyond the seventh grade. He was found to be disabled within the meaning of the Social Security Act beginning December 31, 1973, due to low back pathology and peripheral vascular disease of his left leg, and accordingly he began receiving disability benefits at that time.

Prior to the onset of his disability, plaintiff was employed as a taxicab driver. According to the facts presented in the record, plaintiff has not been employed since 1974, except for a period of one and a half days in 1979 or 1980 during which he worked as a bookbinder, a job that, according to his testimony, he was asked to leave because his physical condition prevented him from doing the work.

In early 1981, it was determined that plaintiff's medical disability had ceased because his physical impairment was no longer sufficiently severe to prevent him from engaging in "substantial gainful activity," and that therefore his entitlement to benefits had terminated, effective February, 1981. After this determination was upheld upon reconsideration, a *de novo* hearing before an Administrative Law Judge was held at plaintiff's request on April 15, 1982.

Plaintiff was unrepresented at the ALJ hearing and was the only person who testified. A transcript of the hearing, as well as the documentary evidence considered by the ALJ, has been placed before the court by way of the Secretary's answer.

The documentary evidence consisted of the following consultive reports prepared at the government's request: (1) a report by an orthopedic surgeon of a January 7, 1981 orthopedic evaluation of plaintiff, which revealed "severe lumbar scoliosis" of the back and spine, mild atrophy of the left thigh, and a half-inch shortening of the right leg due to scoliatic pelvic tilt; (2) a doctor's report of a December 29, 1980 peripheral vascular examination of plaintiff which revealed no peripheral arterial disease; (3) a case analysis prepared by a doctor employed by the Social Security Administration ("SSA"), dated May 1, 1981, which reviewed plaintiff's early medical history as well as the 1980 and 1981 reports enumerated above and concluded that plaintiff's activities "would be limited to light work activity that did not necessitate repetitive bending or stooping"; (4) a report of a September 14, 1981 consultive physical and x-ray examination of plaintiff in which the examining doctor diagnosed plaintiff's condition as "lumbrosacral myofasciitis with underl[y]ing degenerative arthritis"; and (5) a radiology report of x-rays of plaintiff's spine taken September 14, 1981, which revealed "marked deformity of the lumbar spine", "that the spine is tilted to the right", and that "hemivertebrae are demonstrated at the level of L3–L4 and L5."

Based on the above evidence and after "careful examination of the entire record", the ALJ rendered a decision which found plaintiff to be under a "continuous 'disability'" and which reads in part as follows:

The Administrative Law Judge has taken careful note of claimant's appearance and demeanor which suggested a person in great pain and to his testimony that he is restricted in his physical activites [sic] and to the many medical reports submitted on his behalf which clearly show a severe back problem (lumbar scoliosis), causing unrelenting pain. Hence, the Administrative Law Judge finds that upon consideration of the claimant's age, work history and limited education and that his [sic] is not now engaging in substantial gainful activity (work) and is unable to return to his past relevant work as a cab driver, that using the criteria as found in Rule 201.09, Table 1, Appendix 2, Subpart P, Regulations No. 4 claimant, at best, is limited to the performance of sedentary work and therefore is found to be disabled.

The ALJ's decision was reversed on November 17, 1982 by the SSA Appeals Council on its own motion for review, and the Appeal's Council's decision became the final decision of the Secretary. The findings of the Appeals Council were that plaintiff does have a severe back impairment, but that his assertions as to the severity of his back pain "are not credible" and the medical evidence shows him capable of "light work", as that term is defined in the regulations, 20 C.F.R. § 404.1567. As a result, the Appeals Council found plaintiff not disabled.

## II. *The Secretary's Decision Process*

Where it has been determined that an individual once was under a disability, the Secretary may suspend the payment of disability insurance benefits if he finds that the disability has ceased. 42 U.S.C. § 425. A "disability" must be found to have ceased when current evidence shows that the individual's impairment is no longer of such severity as to prevent him from en-

gaging in any substantial gainful activity. 20 C.F.R. §§ 404.1594, 416.994.

The regulations promulgated by the Secretary under which a claim of continuing disability is to be determined require a five-step evaluation process, as described by the Second Circuit:

First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Secretary next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Secretary will consider him disabled without considering vocational factors such as age, education, and work experience; the Secretary presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Secretary then determines whether there is other work which the claimant could perform.... [T]he claimant bears the burden of proof as to the first four steps, while the Secretary must prove the final one.

*Berry v. Schweiker,* 675 F.2d 464, 467 (2d Cir.1982).

Following this step-by-step analysis, both the ALJ and the Appeals Council found plaintiff is not engaged in substantial gainful activity, that he has a severe impairment, and that his impairment is *not* one "listed" in the regulations. With respect to the fourth step, the ALJ explicitly found that plaintiff is "unable to return to his past relevant work as a cab driver", but the Appeals Council found there was insufficient evidence in the record to make a determination on this point.

Both the ALJ and the Appeals Council therefore reached the final step of the inquiry—the one on which the Secretary bears the burden of proof. The former found that the evidence established plaintiff could "at best" perform "sedentary work", as that term is defined in 20 C.F.R. § 404.1567(a). The latter found plaintiff capable of "light work". 20 C.F.R. § 404.-1567(b).

Under the SSA's "grid" formula for determining disability on the basis of age, educational background, work experience, and residual functional capacity (i.e., ability to work), 20 C.F.R. Part 404, Subpart P, Appendix 2, the Appeals Council's finding that plaintiff can perform "light" work led to the conclusion that plaintiff is not disabled, while an affirmance of the ALJ's finding that plaintiff could perform only "sedentary" work would have directed the conclusion that plaintiff is disabled within the meaning of the Act.[1]

### III. *Discussion*

The nub of this controversy is whether there is substantial evidence in the administrative record which was before the Appeals Council to support its finding that notwithstanding his severe back impairment[2] plaintiff has a residual functional capacity for light—as opposed to only sedentary—work. Plaintiff contends that such support is lacking and that under the

---

**1.** The Secretary determined that plaintiff is closely approaching advanced age and has limited education and no transferable skills. Under the "grid" formula, a person having such characteristics who can perform light work is not disabled, while a person who can perform only sedentary work is disabled.

**2.** It appears from the medical evidence in the record that plaintiff's medical impairment stems from musculoskeletal problems, primarily in the back, and not from a vascular disease. Plaintiff did not provide contrary evidence to the effect, nor does he now contend, that the evidence showing that he no longer suffers from peripheral arterial disease is somehow incorrect.

regulations the Secretary's decision must therefore be overturned.[3]

Under the established standard for judicial review of a nondisability decision by the Secretary, the decision that plaintiff is no longer disabled must be sustained if it is supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971).

■ The Secretary is entitled to the full benefit of this strictly limited review standard even in cases, such as this, in which the final decision of the Secretary is not in agreement with the findings and decision of the ALJ who was present at the agency hearing. *See, e.g., Johnson v. Califano*, 607 F.2d 1178, 1183 (6th Cir.1979) (Secretary has undisputed power to accept or reject the finding or conclusion of an ALJ).

The substantial evidence standard requires that the Secretary's decision be founded on "more than a mere scintilla" of evidence and that it be based on "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson, supra,* 402 U.S. at 401, 91 S.Ct. at 1427. *See also Memoli v. Califano*, 463 F.Supp. 578, 582 (S.D.N.Y. 1978) (Carter, J.).

■ The Secretary's determination may be overridden "if reliance is placed on one portion of the record in disregard of overbalancing evidence to the contrary." *Id.* at 582. *See also Weber v. Harris*, 640 F.2d 176, 178 (8th Cir.1981) ("the substantiality of evidence must take into account whatever in the record fairly detracts from its weight.").

The regulation critically relied on by the Appeals Council in terminating plaintiff's benefits is 20 C.F.R. § 404.1567(b), which defines "light work" as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm and leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

There is no evidence in the record which supports a finding that plaintiff is able to sit, stand, or walk during an eight-hour day for more than two hours each, the durational capacity determined by the orthopedic surgeon who examined plaintiff in December, 1980. According to plaintiff's own testimony at the hearing, his back condition prevents him from sitting for more than an hour and a half and from sitting comfortably for more than twenty minutes.

The cryptic statement in the report of plaintiff's September 14, 1981 physical examination, that "he can sit, walk and climb 7" is not, despite the Secretary's claim to the contrary, "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion" that plaintiff can sit, walk, and climb for seven hours at a time, particularly in light of all the other evidence in the record.[4] *Richardson, supra,* 402 U.S. at 401, 91 S.Ct. at 1427.

Furthermore, there is no evidence in the record that plaintiff is capable of *frequently* lifting or carrying objects weighing up to ten pounds. The residual functional capacity evaluation completed by the orthope-

---

**3.** Plaintiff also contends that the case must at least be remanded for a new hearing because the ALJ, although deciding in plaintiff's favor, failed to fulfill his "special obligation to protect the rights of unrepresented claimants by fully uncovering all the relevant facts." *Echevarria v. Secretary of Health & Human Services*, 685 F.2d 751, 753 (2d Cir.1982). Due to the court's decision that substantial evidence does not support the Secretary's finding of nondisability, the court does not reach the merits of this impor-

tant challenge to the adequacy of the administrative proceedings.

**4.** The doctor who made this report failed to fill out the residual functional capacity from which SSA uses to obtain detailed information concerning, among other things, a claimant's ability to walk, stand, or sit for specified periods of time.

dic surgeon stated that plaintiff could "never" lift or carry fifty pounds and that he could "occasionally" lift twenty pounds. The orthopedic surgeon left completely blank the sections of the residual functional capacity form which asked whether plaintiff could "frequently", "occasionally", or "never" lift or carry up to ten pounds.

The report of the September 14, 1981 examination, while stating that plaintiff can "lift and carry up to 30 lbs and on occasion up to 50", provides no substantial indication of what weight, if any, plaintiff is able to carry *frequently*. The ALJ elicited no testimony from plaintiff regarding his carrying or lifting capacities.

■ On the record which was before the Appeals Council, therefore, there was no substantial evidence that plaintiff is capable of performing three of the essential elements of "light work", namely, "frequent" lifting and carrying, walking or standing "a good deal", and sitting "most of the time." *See* 20 C.F.R. § 404.1567(b).

Buttressing the conclusion that substantial evidence does not support the Appeals Council finding that plaintiff has a capacity to perform light work is the fact that the Council rejected without adequate reason the credibility of plaintiff's testimony that the pain resulting from his testimony has a debilitating effect upon his functional abilities.

While the ALJ's finding that plaintiff's testimony was credible[5] was of course not binding upon the Secretary, the Secretary must present a basis, supported by substantial evidence, of rejecting the ALJ's credibility finding. As stated in *Beavers v. Secretary of Health, Education and Welfare*, 577 F.2d 383 (6th Cir.1978),

> If the Appeals Council concludes that it must disagree with the credibility findings of an administrative law judge, then it may do so, but only if there is substantial evidence undercutting the reliability of the testimony, evidence which "a reasonable mind might accept as adequate to support a conclusion" that the administrative law judge was wrong about credibility of the witness, in spite of the advantage of having heard the testimony and lived with the case.

*Id.* at 388.

■ The Appeals Council's reasons for finding plaintiff's testimony not credible appear to have been first, minor inconsistencies between his description of his medical condition to consulting doctors in December, 1980 and January, 1981, and his testimony about the same in April, 1982, and second, the suggestion that plaintiff's use of various non-prescription pain relievers somehow belies plaintiff's representations to the ALJ regarding the nature and severity of his pain.

These reasons do not appear to the court to constitute substantial evidence sufficient to be a basis for rejecting the ALJ's reliance on the credibility of the plaintiff's testimony.[6]

■ On the basis of the foregoing, the court concludes that the Secretary's decision that plaintiff is capable of performing light work, and was therefore not disabled as of February, 1981, is not supported by substantial evidence. Since no burden of proof problem arises herein,[7] reversal of

---

5. The ALJ took "careful note of claimant's appearance and demeanor which suggested a person in great pain and to his testimony that he is restricted in his physical activities."

6. The Court notes in this regard that a disability claimant's testimony concerning subjective pain caused by his impairment is of critical importance to a disability determination by the Secretary. *See Gallagher v. Schweiker*, 697 F.2d 82, 84 (2d Cir.1983); *Echevarria v. Secretary of Health & Human Services*, 685 F.2d 751, 755 (2d Cir.1982). It is against this background that a court must take care to ensure that the Secre-

tary has substantial evidence on which to rely in rejecting an ALJ's determination, such as that here, that "claimant's appearance and demeanor ... suggested a person in great pain."

7. The parties' briefs discuss at length the question of whether plaintiff bears the same burden of proving disability in a case, such as this, involving termination of benefits, as in a case involving an initial application for benefits. This question is an open one in the Second Circuit. *Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir.1982). In any event, this question is not relevant to this case, since in *both* initial appli-

the Secretary's determination of disability, with full reinstitution of present and any unpaid back benefits, is appropriate.[8]

SO ORDERED.

cation and termination cases, the burden of proof is upon the Secretary when, as here, the Secretary's decision rests upon the "grid" formula for determining whether there is work, other than the claimant's previous job, which the claimant can perform. *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir.1982).

8. Reversal, as opposed to a remand for further findings by a new ALJ, will avoid nettlesome problems concerning the time periods for which the question of disability would be readjudicated. It would of course be difficult now for the Secretary to obtain further evidence as to the plaintiff's medical condition in February, 1981, now almost three years ago. Moreover, it would appear from the relevant regulations that plaintiff's present age of fifty-five places him in the "advanced age" category and under the grid formula a finding of disability would be directed even if it were determined that plaintiff is *now* capable of performing "light work". *See* 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 201.02.