817 F.2d 756
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Marshall FOX, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 86-1467.
 United States Court of Appeals, Sixth Circuit.
 May 7, 1987.
 
 Before KENNEDY, RYAN and NORRIS, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiff-appellant Marshall Fox ("plaintiff?') appeals the .final decision of the Secretary of Health and human Services ("the Secretary") denying plaintiff's application for disability insurance benefits. The Secretary determined that plaintiff retained the functional capacity for sedentary work and was not entitled to benefits. The District Court for the Western District of Michigan affirmed the Secretary's decision. We find that there was substantial evidence to support the finding of the Secretary that plaintiff could perform sedentary work and we affirm the denial of benefits.
 
 
 2
 Plaintiff Fox was born on May 13, 1919. He completed the twelfth grade in school. Aside from three years of service in the Army, from 1943 to 1945, plaintiff worked as a machinist at one manufacturing plant for forty-two years. His job involved running machinery, regularly lifting and pushing twenty to fifty pounds, standing or walking for eight hours, and bending and reaching. Plaintiff has not worked since November 10, 1981. He slipped at work, and his back and left ankle were apparently injured when a fixture fell on him. he entered the hospital in December of 1981, complaining of severe back pain. A myelogram revealed the possibility of spinal stenosis. Plaintiff's treating physician, Dr. Hamati, performed a laminectomy.
 
 
 3
 Plaintiff filed an application for disability insurance benefits on June 21, 1982. He alleged that he was substantially disabled due to his back injury and bladder incontinence resulting from the back surgery. His application was denied initially and upon request for reconsideration. A hearing was held before an administrative law judge ("ALJ") on April 28, 1983. On June 24, the ALJ issued a decision denying plaintiff's claim. The ALJ found that although plaintiff's impairment prevented him from performing his former work, he retained the functional capacity to perform a fun range of sedentary work. The Appeals Council could find no basis for review and the ALJ's decision became the Secretary's final decision on January 5, 1984. The District Court affirmed the decision of the Secretary, finding substantial evidence to support the findings of the ALJ. Plaintiff appeals the denial of benefits.
 
 
 4
 In reviewing the final decision of the Secretary, a court must simply determine whether substantial evidence exists in the record to support the decision. See Kirk v. Secretary of Health and Human Services, 667 F.2d 524, 535 (6th Cir. 1981), cert. denied, 461 U.S. 957 (1983). This determination should be based on the record as a whole. Hephner v. Mathews, 574 F.2d 359, 362 (6th Cir. 1978). Substantial evidence means such relevant evidence as a reasonable mind would accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971).
 
 
 5
 Plaintiff testified at the hearing that he has low back pain and ankle pain that usually occur simultaneously. he stated that the pain has improved somewhat since the surgery in December of 1981. his pain is aggravated by bending and twisting, and he cannot sit for more than thirty minutes at a time. Plaintiff stated that he is able to feed and dress himself, and can do light housekeeping and grocery shopping. he is able to walk six to eight blocks before his ankle begins to bother him. He cannot lift in excess of ten pounds. Plaintiff also testified that he is bothered by bladder incontinence. He goes to the bathroom approximately eight to ten times a day and soils himself three or four times a day. He takes several medications for back pain and was prescribed a medication for the bladder problem. He testified that he does not take the latter medication as prescribed.
 
 
 6
 Plaintiff's treating physician, Dr. Hamati, indicated in his hospital discharge . summary that plaintiff recovered from the back surgery satisfactorily and was discharged with no major complaints or complications. Joint Appendix at 129. Dr. Hamati stated in later reports that plaintiff was "coming along fairly well," although he had some pain and numbness. Joint Appendix at 142. He acknowledged that plaintiff probably would not be able to return to his former job, and ultimately stated that plaintiff should lift no more than fifteen to twenty pounds and should avoid excessive bending and stooping. Joint Appendix at 158. A second physician, Dr. Andre, performed a consultative orthopedic examination in August of 1982 and found that plaintiff suffered from continued radiculopathy of the L5 and Sl nerve roots. Joint Appendix at 145. Dr. Andre noted some tenderness and sensory loss, but also noted that there was no muscle spasm, muscle weakness or reflex deficit. Id. at 144. Straight leg raising produced pain at forty-five degrees and thirty degrees. Id. at 145.
 
 
 7
 The ALJ found from the medical reports that plaintiff "suffers from a severe musculoskeletal impairment diagnosed as status post lumbar laminectomy with continuing radiculopathy of the L5 and Sl nerve roots. his impairment is manifested by limitation of motion and sensory deficits." ALJ Opinion at 4. The ALJ noted plaintiff's ability to walk six to eight blocks, to stand for twenty minutes, and to lift up to ten pounds. he also noted that plaintiff had been able to sit for forty-two minutes for the hearing and ninety minutes for the initial disability interview. The ALJ thus concluded that "[Plaintiff's] exertional limitations are consistent with his retaining the residual functional capacity for performing a full range of sedentary work." Id. We find that there is substantial evidence on the record to support this conclusion.
 
 
 8
 Although the evidence supports plaintiff's claim that he suffers from back pain, the ALJ found that plaintiff's allegations of pain in the low back and ankle were not fully credible. The ALJ's opportunity to observe plaintiff's demeanor at the hearing, and to evaluate what he said and how his testimony fits with the overall evidence, "should not be discarded lightly." Beavers v. Secretary of Health, Education and Welfare, 577 F.2d 383, 387 (6th Cir. 1978). The ALJ's conclusion was based on consideration of the medical findings and plaintiff's testimony as to his daily activities. he especially noted plaintiff's ability to do light housework, to drive long distances, and to regularly sit through church services. In addition, the ALJ considered plaintiff's testimony that he took only mild medication for his back pain during the day. The ALJ's determination as to the credibility of plaintiff's complaint is supported by the evidence.
 
 
 9
 The ALJ also found that plaintiff's allegation of bladder incontinence was not completely credible and that the problem "does not significantly limit his ability to perform basic work activities." ALJ Opinion at 5. A treating urologist, Dr. Walvoord, reported that an examination revealed no abnormality. He stated that there was satisfactory emptying of the kidney and urinary bladder. Joint Appendix at 140. The physician placed plaintiff on a tapering dose of Ditropan, which plaintiff acknowledged relieved his symptoms. Plaintiff testified at the hearing that he was not then taking the medication as prescribed. Joint Appendix at 55-57. Dr. Walvoord stated in his report that plaintiff's bladder problem alone should not interfere with employment. The ALJ reasonably credited great weight to this diagnosis.
 
 
 10
 Plaintiff is clearly not able to return to his former job. his treating physician stated that he should lift no more than fifteen to twenty pounds and that he should avoid excessive bending. A vocational expert testified that plaintiff's work skills are transferable to 64,820 semi-skilled sedentary jobs, such as press operator and inspector, and that there would be some vocational adjustment. The ALJ found that plaintiff retained the functional capacity to perform sedentary work and concluded that plaintiff is not "disabled." We find substantial evidence to support the, ALJ's conclusion and we affirm the District Court's denial of benefits.