787 F.2d 593
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
JAMES G. THACKERAY, Plaintiff-Appellant,
vs.
MARGARET M. HECKLER, Secretary of Health and Human Services,
Defendant-Appellee.
 85-1205
 United States Court of Appeals, Sixth Circuit.
 3/3/86
 
 VACATED AND REMANDED
 E.D.Mich.
 ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN
 Before: KEITH and MARTIN, Circuit Judges; and SPIEGEL,* District Judge.
 PER CURIAM.
 
 
 1
 James Thackeray appeals from the judgment entered in the United States District Court for the Eastern District of Michigan denying his motion for summary judgment and dismissing his claim for disability insurance benefits brought pursuant to the Social Security Act, 42 U.S.C. Sec. 301 et seq.[1]
 
 
 2
 Previously, on July 9, 1981, plaintiff filed his application for benefits that was denied initially and on reconsideration. Plaintiff then requested a hearing before an Administrative Law Judge (ALJ) who, on November 24, 1982, issued his recommended decision that benefits be awarded from the onset date plaintiff claimed in his application. On its own motion, however, the Appeals Council reversed the decision of the ALJ, concluding that plaintiff was not entitled to a period of disability, disability insurance benefits or supplemental security income. Appeal to the District Court ensued,[2] where the case was referred by the District Judge to the United States Magistrate for Report and Recommendation. The Magistrate recommended that the Secretary's decision to deny benefits be affirmed because there was substantial evidence in the record to support same. On January 23, 1985 the District Judge adopted the Magistrate's Report and Recommendation, and thus judgment was entered in the Secretary's favor.
 
 
 3
 Plaintiff was born on June 27, 1930 and was fifty-two years old at the time of the administrative hearing. He has a high school diploma and, since graduation, among other jobs, has worked as a test driver of automobiles and semi-trucks, a laborer, a sales representative, and a permit agent. His last position required car travel and, during November 1979, while exiting his vehicle, plaintiff slipped and injured his right shoulder, back, and neck. Plaintiff worked until April 30, 1980, when his pain apparently became too unbearable. Plaintiff attempted to work on two occasions after his alleged onset date, but was unable to do so. Thinking it would be lighter work than that to which he was accustomed, plaintiff first applied to a cable television company; he was denied employment, however, because the required medical exam revealed his back condition. Plaintiff's second attempt, this time as a bartender, similarly was unsuccessful for lack of stamina.
 
 
 4
 The evidence before the ALJ was sufficient to convince him that plaintiff was unable to perform his past employment as a permit agent. Plaintiff's most recent employment required him to log fourteen hour days, with ninety hour weeks a somewhat regular occurrence; he traveled by car extensively, negotiating with landowners for permission to perform geophysical and seismic testing. The ALJ concluded that increasing back pain and a deteriorating heart condition prevented plaintiff from continuing with his rigorous schedule. Referring to plaintiff's treating osteopath, Benjamin Palmer, D.O., and consultative osteopath George S. Sehl, D.O., concerning plaintiff's back condition and pain appurtenant thereto, as well as to another consultative physician, Howard Wolok, M.D., regarding plaintiff's cardiac condition, the ALJ decided, coupling the medical evidence with plaintiff's prior good work record, that plaintiff neither could engage in his prior employment nor in any other substantial gainful employment and recommended that benefits be granted.
 
 
 5
 The Appeals Council took a different view of the evidence. It maintained that the diagnosis and opinion of Dr. Palmer concerning his patient's inability to work was not supported sufficiently. Further, it apparently believed that the tests conducted by consultative physician Dr. Wolok belied plaintiff's complaints of chest pain. The ALJ, in accordance with applicable law, had evaluated plaintiff's testimony concerning pain and limitation with the reports of these two doctors in mind. Fairly stated, then, the Appeals Council essentially concluded that the ALJ's credibility assessment of plaintiff's testimony was without support in the record.
 
 
 6
 This Court has stated that the Appeals Council may reject the credibility findings of an ALJ, 'but only if there is substantial evidence undercutting the reliability of the testimony.' See Beavers v. Secretary of Health, Education and Welfare, 577 F.2d 383, 388 (6th Cir. 1978). For the reasons expressed below, our review of the record leads us to conclude that the Secretary, through the Appeals Council, acted contrary to the teachings of Beavers.
 
 
 7
 Plaintiff sustained a fall in November 1979. He sought treatment with Leo Modzinski, D.O., and James Rae, M.D. X-rays taken in August 1980 prompted a diagnosis by J.E. McEnroe, M.D., who indicated that plaintiff suffered from degenerative joint disease involving the dorsal spine ranging from mild in the upper dorsal area to moderately severe in the lower dorsal area. John Colwill, M.D., likewise diagnosed degenerative joint disease of the dorsal spine with possible costovertebral joint dysfunction.
 
 
 8
 Turning to plaintiff's cardiac problems, hypertension and chest pain were diagnosed by Dr. Modzinski and Dr. Palmer, plaintiff's treating osteopath since 1981. Dr. Palmer also diagnosed plaintiff's back condition. Submissions by Dr. Palmer are of special interest given that the Appeals Council found his diagnosis of disability lacking in clinical support. On August 8, 1981, Dr. Palmer completed a three-page form sent to him by the Secretary, filling in all relevant portions. It appears that Dr. Palmer was responsible for providing the report of orthopaedic surgeon Dr. Colwill to the Secretary for his review. Dr. Palmer completed another two-page form report sometime after the one dated August 1981. His diagnosis was consistent and, in the latter report, he opined that plaintiff could not work. Finally, Dr. Palmer wrote a letter dated February 23, 1983 to claimant's attorney in which he expressed his dismay after having read the Appeals Council's determination to review the ALJ's recommended decision and the reasons therefor. He confirmed plaintiff's testimony that plaintiff visits him for treatment every two weeks and again reaffirmed his opinion that plaintiff is unable to work. The Secretary, of course, is familiar with our rulings relating to the deference that should be accorded to treating physicians when their diagnoses have the requisite backing. See King v. Heckler, 742 F.2d 968, 972 (6th Cir. 1984).
 
 
 9
 Focusing next on the report of Dr. Wolok, a consultative physician, we observe that he noted less than a full range of motion for the lumbar spine and diagnosed status post trauma to the lumbar spine and right shoulder. Concerning plaintiff's cardiac condition, Dr. Wolok gave diagnoses of chronic obstructive pulmonary disease and arterioclerotic heart disease with atypical angina. A multistage treadmill test was discontinued because plaintiff complained of chest pain. At no time did Dr. Wolok express any opinion as to how plaintiff's impairments affected his ability to work. Nor did he ever suggest that plaintiff was exaggerating his pain. And, to the extent that the Appeals Council credited Dr. Wolok's report over that of plaintiff's treating osteopath, we are constrained to point out that Dr. Wolok described plaintiff as having smoked one pack of cigarettes per day for twelve years. According to Dr. Sehl, however, plaintiff had not smoked in more than twenty-five years; such a discrepancy, to a certain degree, calls Dr. Wolok's credibility into question. Moreover, Dr. Sehl tagged plaintiff as apparently disabled. While Dr. Sehl suggested methods to improve plaintiff's condition, he never indicated that these would vitiate disability.
 
 
 10
 Plaintiff testified that, after his fall, he attempted to persuade his supervisor to allow him to work as a less physically trying schedule. His request was refused and he collapsed from strain on three separate occasions. Plaintiff attempted to secure other employment to no avail. He no longer can start a lawn mower or outboard, rake leaves or walk on uneven ground. He becomes short of breath after walking fifty yards. It is undisputed that plaintiff has worked hard all his adult life. He related his embarrassment to the ALJ over having to file an application for disability insurance benefits and supplemental security income. No doctor, whether treating or consultative, suggests that plaintiff exaggerates his symptoms.
 
 
 11
 The Secretary seeks to undercut the ALJ's conclusion that plaintiff cannot perform substantial gainful employment by faulting plaintiff's treating physician for filing out the forms that the Social Security Administration provided and by crediting a consultative physician who, to the extent he even bolstered a finding of no disability, may not have been sure of all salient factors concerning the patient he was examining. On balance, we conclude that there is no substantial evidence to support the Appeals Council's rejection of the medical underpinning to which the ALJ looked to pronounce plaintiff's testimony of pain and limitation credible. Accordingly, the judgment of the District Court is VACATED and the case REMANDED to the District Court with instructions to remand to the Secretary for an award of benefits.
 
 
 
 *
 The Honorable S. Arthur Spiegel, District Judge for the United States District Court for the Southern District of Ohio, sitting by designation
 
 
 [1]
 Plaintiff originally had applied for supplemental security income in addition to a period of disability and disability insurance benefits. But on appeal to the District Court he challenged only the Secretary's decision concerning his application for a period of disability and disability insurance benefits
 
 
 [2]
 See supra note 1